**UNITED STATES DISTRICT COURT**

**DISTRICT OF MARYLAND**

| | |
|---|---|
| MALIBU MEDIA, LLC,<br>Plaintiff,<br>v.<br><br>JOHN DOE subscriber assigned IP address 74.103.54.222,<br>Defendant. | Case No. 1:14-cv-0260-CCB<br><br>Assigned to: Honorable Catherine C. Blake<br>United States District Judge |
| MALIBU MEDIA, LLC,<br>Plaintiff,<br>v.<br><br>JOHN DOE subscriber assigned IP address 98.204.121.246,<br>Defendant. | Case No. 1:14-cv-0660-GLR[1]<br><br>Assigned to: Honorable George Levi Russell, III<br>United States District Judge |

**ISP SUBSCRIBER'S REPLY IN SUPPORT OF MOTION TO: (1) INTERVENE ANONYMOUSLY; (2) CONSOLIDATE MALIBU MEDIA CASES; AND (3) TEMPORARILY STAY OUTSTANDING SUBPOENAS**

[1] An identical version of this document is being filed in both cases listed on the caption above. In addition, essentially identical papers were previously filed, on March 28, 2014, in three other related Malibu Media cases: D. Md. Nos.: 1:14-cv-0223-MJG, 1:14-cv-0257-CCB, and 1:14-cv-0263-RDB.

# I. REPLY

The Internet user who pays the bill for the account associated with the IP address listed on the caption of this case, who plaintiff Malibu Media, LLC ("**Malibu"**) accuses of being the John Doe defendant in this action ("**Movant**") hereby submits this reply brief in further support of Movant's "**Procedural Motion**" to (1) to intervene in this action, per Fed. R. Civ. P. 24, on an anonymous basis, for the purpose of adjudicating the issues raised in Movant's concurrently-filed motion for an order to show cause as to why all evidence and data from Tobias Fieser and his company IPP should not be precluded and these cases dismissed (the "**Motion For An OSC**"); (2) to consolidate, per Fed. R. Civ. P. 42(a)(1), this and other Malibu cases in this district for the purpose of deciding the Motion For An OSC; and (3) to stay the return dates on any outstanding ISP subpoenas, and stay the issuance of any further ISP subpoenas, pending adjudication of the Motion For An OSC.

The gravamen of Malibu's opposition to the instant Procedural Motion is that any kind of defense of these actions by Movant, or any kind of inquiry into IPP, Malibu's key contingent fee witness, is "premature," and that Movant supposedly does not have an interest in this case. Opp. to Procedural Motion, p. 2.

However, Malibu's actions in the case before Judge Motz strongly suggest that, for Malibu, the "appropriate time" to address the issues related to the contingent fee agreement with its key witness, is never. *See* Pietz Decl. (filed March 28, 2014), Exhibits X & Y. Malibu was willing to dismiss a case, rather than risk addressing the contingent fee witness issue (particularly in a case before Judge Motz, who did much to author this circuit's law on contingent fee witnesses). *See id.* Since Malibu refuses to do so voluntarily, unless the Court orders Malibu to show cause, Malibu can keep dismissing any defendant who starts asking the right questions, and the issue will never see the light of day, with

lawsuits and discovery, predicated upon work done by a champertous contingent fee witness, continuing indefinitely.

## II. THE MOTION TO INTERVENE ANONYMOUSLY SHOULD BE GRANTED

### (a) Is the Motion to Intervene Even Necessary?

Given the gray-area—which Malibu's entire business model is built on exploiting—about what exactly is the status of an ISP subscriber in a case like this, it is not clear if a motion to intervene is even necessary. Certainly, Movant has not been *served* as a defendant, so he is not entitled to discovery. That much is clear.

However, has Movant been identified or *named* as a defendant? That is less clear, given the vague and ambiguous way Malibu constructs its original complaints against John Doe defendants. *See* Complaint, caption & ¶ 10 ("Defendant's Internet Service Provider can identify the Defendant").[2] In the Northern District of Illinois, Malibu has taken the position that it does not need to file amended complaints formally alleging the true name of the ISP subscriber who is accused of *being the defendant,* because, according to them, its the original complaint is sufficient to identify the ISP subscriber *as the defendant*, albeit using the pseudonym "John Doe." *See, e.g,* *Malibu Media, LLC v. John Doe,* N.D. Ill. No. 13-3648 (case proceeding past service based on original "John Doe" complaint). Arguably then, the original complaint amounts to naming the ISP Subscriber *as the defendant*. Here, by contrast, Malibu has taken the opposite view, that an ISP Subscriber is merely a third party, about whom discovery is being sought, and, thus, the Does have no standing to do anything in the case except have their depositions taken whenever Malibu demands it. Pietz Decl., Exhibit X. In reality, the people who pay

---

[2] That is not actually correct, but that is what Malibu has alleged. The ISP can reliably identify the person who pays the bill for the account where the IP address in question was assigned at the time in question. That person, who pays the bill, who may properly be *suspected* of being the "John Doe" defendant. However, Malibu arguably takes the position with this allegation that whomever the ISP identifies by subpoena return *is the* "Defendant".

their household (or, occasionally, business) Internet bills, who receive the ISP notices about pending subpoenas related to their accounts, can be most appropriately thought of as *suspected* defendants. Thus, people in Movant's position are really somewhere between defendants and third parties, although the Rules do not expressly provide for that kind of status.

Often without expressly addressing this issue or requiring a formal motion for intervention, most courts have been willing to allow unidentified John Doe ISP subscribers to file motions seeking relief, such as motions to quash, sever, or dismiss, notwithstanding the peculiar position the Does occupy. Of the courts that have expressly considered whether Does have standing to seek relief, almost all have concluded that they do, often on the way to granting John Doe motions to quash, sever, or dismiss. *See, e.g., Malibu Media, LLC v. Does 1-25,* No. 12-cv-0362-LAB (DHB), 2012 WL2367555, at *2 (S.D. Cal. June 21, 2012) (although Does' privacy interest in their identifying information held by their ISP's was "minimal at best," they nevertheless had standing to seek to challenge the subpoena); *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012) (same); *Third Degree Films, Inc. v. Does 1-2010*, No. 4:11 MC 2, 2011 WL 4759283, at *5 (N.D. Ind. Oct. 6, 2011) (finding that a Doe defendant had standing to assert his privacy interest in the information requested from the ISP); see also *United States v. Idema*, 118 Fed. Appx. 740, 744 (4th Cir. 2005) (unpublished); *Robertson v. Cartinhour*, D Md. No. 8:09-cv-3436, ECF No. 5, 2/23/10 (Day, M.J.) (applying *Idema*); *In re Grand Jury Subpoena John Doe,* 584 F.3d 175, 184, 190-91 (4th Cir. 2009); *but see AF Holdings, LLC v. John Does 1-1,058,* D.D.C. No. 1:12-cv-0048, ECF No. 46, 8/6/12 (Howell, J.).[3]

[3] Judge Howell is one of very few federal judges to have concluded that Does lack standing to seek severance (*id.* at p. 15), a position of hers which is currently on appeal to D.C. Circuit, Appeal No. 12-7135. Oral argument was heard in that appeal on April 14, 2014.

Accordingly, here, Movant does not concede the intervention is even technically required as a pre-requisite to seeking the relief requested in the Motion For An OSC, which, among other things, seeks to vacate the outstanding ISP subpoenas. The motion to intervene is being made as a formality, in response to Mr. Hoppe's strenuous assertions that he would view anything filed on the docket by Movant as grounds for seeking sanctions, on the theory that Movant is not a party. Pietz Decl., Exhibit X. It is in response to that position then that Movant seeks to go through the trouble of formally intervening in the case, to try and clear up one less technical, procedural roadblock Malibu has tried to erect on the path to learning the facts about IPP's oral contingency fee agreement.

### (b) Intervention Is Clearly Warranted

#### (1) Movant's Interests Are Not Protected By Any Existing Party

While one can certainly imagine why Malibu might prefer to continue litigating without an opponent of any kind, it is a tall order indeed to ask this Court to abandon hundreds of years of precedent recognizing the importance of an adversarial judicial process. This point alone should establish that, at a minimum, discretionary intervention should be allowed in this case.

#### (2) Intervention is Timely

Relying on an offhand dictum from a case where the Fifth Circuit actually reversed a district court for failing to allow intervention as of right, Malibu argues that "Courts should discourage premature intervention that wastes judicial resources." Opp. to Procedural Motion, at p. 3, *citing Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (concluding that timeliness factor supported intervention and holding district court erred in refusing to allow environmental groups to intervene as of right). While one can imagine why a court might be reluctant to allow an environmental group to challenge a new regulation before litigation with more direct parties was finished playing out, it is

notable that Malibu cites to no case where intervention was denied *and there was no other defendant already in the case*.

In support of its timeliness argument, Malibu next cites to Voltage Pictures, LLC v. Vazquez, 227 F.R.D. 28, 32 (D.D.C. 2011) (Howell, J.). Judge Howell is the leading judicial proponent of several minority views about this kind of litigation, including Does' standing to seek relief such as severance. However, most other courts have disagreed with her views about the ability of Does to seek affirmative relief. Moreover, in Voltage Pictures, there were already 12 named defendants in the case when Judge Howell denied the motion to intervene filed by of one of the 24,583 (!) John Doe ISP subscribers. Thus, that case is distinguishable to the kind of single-Doe, no-defendant litigation at issue here. Further, while one can understand why Judge Howell may wished to avoid creating a procedural albatross with 24,000+ intervenors, and with due respect, her conclusion that allowing an ISP subscriber to intervene would deprive the plaintiff of its ability to select appropriate defendants to name and serve (*id*. at 32) is questionable at best. That conclusion is picked from the plaintiff's opposition, unsupported by any citation, and there is no reason that the person who pays the bill for the account cannot have a seat at the table, regardless of who the plaintiff chooses to accuse and then serve *as the defendant*. *Id.* Allowing an additional intervening party simply does not deprive the plaintiff of a choice about who to serve as a defendant.

Finally, Malibu cites Gould v. Alleco, Inc., 883 F.2d 281 (4th Cir 1989) for the proposition that intervention should not be allowed if it will cause substantial additional litigation. Of course, such a point could be made about any motion, and that is not what that case actually holds. Rather, in Gould, the parties reached a class action settlement, and certain bondholders moved to intervene so as to object to the terms of the settlement, which would have resulted in "delay of the disbursal of the settlement


funds." *Id*. This case is just getting started; there is no proposed class settlement being hi-jacked by a would-be intervenor.

(3) Movant Has An Interest In The Subject Matter of the Underlying Action

Again relying on Judge Howell from *Voltage Pictures*, Malibu argues the law as it is phrased on the D.C. Circuit. Here on the Fourth Circuit, the question is whether the intervenor has "an interest in the subject matter of the underlying litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838 (4th Cir. 1999). As noted above, the exact status of the ISP subscribers in these cases is unclear. Malibu focuses mainly on Movant's point that Malibu has routinely sought to depose ISP Subscribers, at least in Maryland. While that is true, and it alone is probably enough to justify intervention in the circumstances here, that is not the sole extent of Movant's interest in this case. There are dozens of ISP subscribers currently incurring legal fees as a result of Malibu's litigation in this district, and thousands more nationwide. Can it possibly be correct that none of them have a legal interest in anything? None of them should be allowed to ask anything of the Court? Presumably, one reason for the requirement that no discovery be allowed in litigation until parties on both sides have appeared and a Rule 26(f) conference can be conducted, is to avoid having the federal courts become a one-way street for unilateral discovery.

In addition the legal fees, burden of a deposition, and potential for contributory infringement liability, Movant also absolutely has a "legally protectable interest" in his personally identifiable information, which is currently being sought via the ISP subpoena. That is an issue that has come up most often in motions to quash subpoenas, which is, of course, one aspect of the relief Movant seeks here, and courts have held that ISP subscribers like Movant do have a valid legal interest to protect at the initial phase of this kind of litigation. *See, e.g., Malibu Media, LLC v. Does 1-25,* No. 12-cv-0362-LAB

(DHB), 2012 WL2367555, at *2 (S.D. Cal. June 21, 2012). Even Judge Howell has recognized that users of file sharing networks are, to some extent, engaged in First Amendment-protected "speech" when they post and download different content, and, thus, that interest is legally protectable and has to be weighed against a copyright holders right to sue for infringement when evaluating subpoenas in cases like this. *Call of the Wild Movie, LLC v. Does 1-1,062*, D.D.C. Case No. 10-cv-455, ECF. No. 40, 3/22/2011, p. 21 (Howell, J.) ("file-sharers are engaged in expressive activity, on some level, when they share files on BitTorrent, and their First Amendment rights must be considered before the Court allows the plaintiffs to override the putative defendants anonymity by compelling production of the defendants' identifying information.")

Malibu's argument that motions to intervene are denied when a party's only goal is to move for Rule 11 sanctions is also inapposite. First, Movant has not filed a Rule 11 motion. Second, Rule 11 Motions by non-parties are indeed allowed in some limited circumstances when the movant was directly involved in the litigation and incurred attorney's fees or other expenses because of a party's sanctionable conduct. *See, e.g, Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987) (individuals named in frivolous complaint could seek Fed. R. Civ. P. 11 sanctions even though they had never become parties due to lack of service). If this were a Rule 11 motion, then for the reasons discussed above relating to the ambiguous way Malibu pleads whether the ISP subscriber is the defendant, Movant could argue that this case is like *Greenberg*, where the person seeking sanctions was *named* but not *served*. Third, sanctions and/or attorney's fees are also appropriately awarded to third parties, when they are forced to expend legal fees to respond to an improper subpoena, which is part of what Movant is arguing here. *Mount Hope Church v. Bash Back*, 705 F.3d 418, 425 (9th Cir. 2012) (where plaintiff acts in bad faith with respect to issuance of subpoena, it is appropriate to award sanctions both to subpoena

recipient and to affected non-party with interest in subpoenaed information); Huntair, Inc. v. Climatecraft, Inc., 254 F.R.D. 677, 679-80 (N.D. Okla. 2008) (non-party awarded attorneys' fees in connection with challenging overbroad subpoena).

(4) Movant's Interest Will Be Impaired Absent Intervention Or Other Relief

While the deposition is several steps down the road, the first thing that will happen absent some kind of relief from the Court, is that Movant's personal identifying information will be disclosed by the ISP to Malibu. At that point, Malibu can begin pressuring a settlement. While Movant here is represented by counsel, that does not change the fact that many clients feel pressured to settle this kind of action, simply by virtue of the high costs of defense in federal court, plus the potential for astronomical statutory damages that would put the average person in the poorhouse.

Moreover, in aggregate, the interest of all the similarly situated Does is being impaired by virtue of the structure of this kind of litigation, where Malibu is allowed to obtain discovery, without ever having to answer questions designed to probe whether it is even able to state a *prima facie* claim to infringement. While the protections put into place for the Malibu cases in his district are hugely important and positive, it seems that Malibu was not fully candid as to the inputs that went in to fashioning the system, and that it has now figured out how to game it, by simply dismissing any case where defendants start asking questions about the champertous German computer firm truly behind this litigation business.

### (c) Malibu's Argument Against Permissive Intervention Miss the Mark

Malibu argues that permissive intervention should not be allowed because "the contingency fee agreement was only in place for a small amount of Malibu Media cases that were filed in 2013." First, Malibu has admitted on the record here that it had a contingency fee agreement with its key witness.

That fact alone should justify permissive intervention. The rule for permissive intervention does not require that there be a "defense" in common between the intervenor and the underlying defendant. Rather, there merely needs to be a common question of fact, and Malibu has admitted the existence of at least one such common fact.

The notion that the contingency fee agreement should be disregarded because it was abrogated shortly after a John Doe's lawyer found out about it and made it public (i.e., as of January 7, 2014, when attorney Jonathan Phillips filed Exhibit B to the Pietz Decl. in a case pending in the Northern District of Illinois) is ridiculous. Sure, the cases here were *filed* after the "oral contingency agreement" was supposedly abrogated. However, based on the data currently available, it seems clear that the dates of the supposed "hits," at issue in these lawsuits were all back during the term of the champertous oral contingency fee agreement. Thus, if Fieser and IPP had a motive to lie or embellish in these cases, they had that motivation when they made the supposed observations upon which the whole case here is foundationally supported. Malibu says that the champertous agreement "was not in place for any of the three Movant's cases at issue here." Given that Malibu refuses to explain anything about this agreement, Movant is not inclined to accept this nebulous statement from Movant's counsel. What does "in place" even mean as used there? Instead, how about: When did the agreement begin? When did it end? What did it say? What does the new, post-January-7th-2014 written agreement say? What about all the other people Malibu is currently targeting with suits here in Maryland, was the contingent fee witness paid off in those cases? Every time Malibu says anything about the mysterious IPP and Guardaley, it raises more questions than are answered.

### (d) Malibu Does Not Contest Or Otherwise Address Movant's Request to Be Allowed to Intervene *Anonymously*

Malibu effectively not contesting the anonymity portion of the motion to intervene is consistent with its prior representations to this court. Accordingly, since Malibu apparently does not object to John Doe proceeding using that pseudonym, provided he identify himself to the Court only, Movant will not belabor the point.

## III. CONSOLIDATION IS APPROPRIATE

Malibu's assertions that each of its cases is totally different is basically absurd. Malibu files the same complaint. It relies on the same (questionable) declaration from Tobias Fieser and IPP to file the same early discovery motions. It sends out the same deposition notices, at which it presumably asks the same questions. If it ever actually gets so far as serving anyone, it sends out the same overbroad discovery. When Does respond and seek discovery of their own, Malibu makes and then stands on the same boilerplate objections in each case. And then, as a last resort, if any defendants prove difficult in insisting on relevant discovery, Malibu files the same notice of voluntary dismissal without prejudice.

While Malibu can properly argue the pros and cons of consolidation, and urge the Court to exercise its discretion to decline the consolidation requested here, Malibu's argument that Movant has supposedly not pointed to even a single question of law or fact to make issue consolidation *potentially* appropriate is borderline frivolous.

As what the 'cons' would be of consolidating the Malibu cases pending here for the purpose of resolving the issues raised in the Motion For An OSC Malibu points to precisely nothing. Indeed, one can imagine that such consolidation would actually be a big help to Malibu, as it will only have to deal

with these issues once, in a single, streamlined proceeding, instead of having it all raised repeatedly in multiple cases with different judges.

None of Mr. Hoppe's justifications for dismissing the case before Judge Motz held water when he first made them, and Malibu has done nothing in its opposition papers to substantiate these pretextual excuses beyond what Mr. Hoppe said back at the time. Notably, Malibu has not submitted a declaration from Mr. Hoppe or the other lawyers in Miami denying that they reviewed the citations they were sent to Judge Motz's decision in Accrued Financial prior to deciding to hit the eject button from the case where all this stuff about the contingent fee witness was raised initially. Thus, the dismissal of the 3024 Action before Judge Motz really does still smack of a kind of forum shopping. Like many of the somewhat novel aspects of this kind of litigation, it is a kind of forum shopping that can only occur when you have dozens of identical cases pending at the same time in different courts.

In any event, Movant stands by his prior statement that he is happy to proceed before any judicial officers of this district. However, Movant does believe, and Malibu has failed credibly suggest otherwise, that it makes sense and would promote judicial economy to handle the Motion For An OSC and any resulting OSC, discovery or hearings in consolidated fashion, consistent with Fed. R. Civ. P. 1.

## IV. THE STAY ISSUE IS EFFECTIVELY MOOT AS TO MOVANT HERE BUT THE COURT SHOULD STAY DISCOVERY IN ALL CONSOLIDATED CASES

As a result of this Court's order of April 17, 2014, the stay issue is effectively moot as to Movant in this case, because the ISP has been informed not to do anything pending further order of this Court.

Again trying to walk a fine line, Malibu states that "the contingency fee agreement was not present in any case filed in the year 2014." Opp. to Procedural Motion, at p. 10. Well, it was present when Fieser and IPP (or, according to Malibu's newer story, Patzer and Excipio) logged the data at issue

in these cases back in 2013, wasn't it? Of course, Malibu dances around that point in its opposition here. These are the same questions Movant has been asking since at least March 3, 2014. Pietz Decl., Exhibit X.

Malibu keeps filing new cases in Maryland, and Movant's counsel has recently received a few phone calls from ISP subscribers who have received new letters, presumably from new subpoenas. If the Court agrees that there are serious concerns to be addressed about Malibu's key contingent fee witness, and that Malibu was not candid in some of the things it said during the process devising the current system, then, really, there is no reason to allow discovery to continue in any of these cases, until the Court can resolve all of these issues. If Malibu is vindicated, they will, of course, just start filing new lawsuits, and this whole process will be nothing more than a speed bump on the road to BitTorrent infringement riches.

Malibu denies retaliating against defendants who dare to assert their legal rights, and, with great pride, cites to orders where its lawyers have been cleared of various kinds of wrongdoing, including one where both the magistrate and district judges issued sanctions and warned Malibu's lead national counsel, Keith Lipscomb, to clean up his act in the future. Opp. to Procedural Motion, p. 10–11, *citing* Exhibits A & B thereto. However, the citations in Movant's brief that Malibu *does not address* tell a different tale. Notably, Malibu has no response to the charge that it routinely sought to proceed only against defendants who objected to swarm joinder. If one believes that Malibu has curbed some of its earlier abuses, or avoided altogether tactics used by other groups of infringement plaintiffs, then that has not come altogether willingly, but, rather, as a result of defense counsel pushing back, and sanctions being issued here and there. In the Motion For An OSC, Movant is asking this Court to push back on

whether the Court will tolerate Malibu using champertous, contingent fee experts, whose involvement it then tries to obscure, to stir up this kind of litigation.

The point of mentioning the retaliation concern is not to unnecessarily disparage Malibu. Rather, Movant's counsel has litigated these kinds of cases enough, both with Malibu, and other plaintiffs to know that retaliation happens all the time. It is probably human nature. The point though is that until the court can decide what to do about a declaration from a contingent fee witness, upon which the instant subpoena and the whole rest of the case is based, then, practically speaking, it would be unfair to allow that subpoena to move forward. Once Doe is identified, that cannot be undone. If the subpoena does move forward, then even if the Court later determines that the whole IPP thing was inappropriate, that may not matter, as it will be moot, Movant will already be identified, and Malibu could potentially retaliate. If Malibu promises not to do so, that is terrific, Malibu should be commended. As noted, with respect to Movant, this issue is now moot anyway, pending further order of the Court.

## V. CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that the Court grant the instant motion to intervene anonymously, order these cases consolidated to a single judge or judges, and stay all subpoena returns in the consolidated cases pending adjudication of the Motion For An OSC.

Respectfully submitted,

DATED: May 31, 2014

**THE PIETZ LAW FIRM**

*/s/ Morgan E. Pietz*

Morgan E. Pietz (Cal. Bar No. 260629)*
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile: (310) 546-5301
**Pro Hac Vice*

**JOHN C. LOWE PC**

John C. Lowe (Md. Bar No. 12409)
5920 Searl Terrace
Bethesda, MD 20816
johnlowe@johnlowepc.com
Telephone: (202) 251-0437
Facsimile: (888) 595-6007
*Local Counsel*

Attorneys For Putative John Does Identified On The Caption

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

*/s/ Morgan E. Pietz*
Morgan E. Pietz

DATED: May 31, 2014